(No. 4730

LEON DUNHAM, LEON BROWN, FREDDIE LEWIS, WILLIE BRITTON, JR., BURTON MOSLEY, WILLIE L. WALKER, KATIE AARON, FOR HERSELF AND AS NEXT FRIEND FOR LINEL AARON, A MINOR, LESTER AARON, A MINOR, LORETTA AARON, A MINOR, LARRY AARON, A MINOR, THE HEIRS AND DEPENDENTS OF LESTER AARON, DECEASED, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 26, 1959.*

MOORE, MING, LEIGHTON AND CHAUNCEY ESKRIDGE, Attorneys for Claimants.

LATHAM CASTLE, Attorney General; LESTER SLOTT, Assistant Attorney General, for Respondent.

WHAM, J.

This case involves multiple claims for recovery under Article XVI, Section 11 of the Military and Naval Code of Illinois, Ill. Rev. Stats., (1953 State Bar Association Edition), Chap. 129, Par. 143.

Claimants, Leon Dunham, Leon Brown, Freddie Lewis, Willie Britton, Jr., Burton Mosley, Willie L. Walker, and Lester Aaron, deceased, were enlisted men and members of the 178th Regimental Combat Team, Illinois National Guard, assigned for and performing their duties as drivers or relief drivers on a motor convoy of approximately one hundred vehicles returning from their annual summer field training period at Camp Ripley, Minnesota.

Claimants Brown, Walker, and the deceased, Lester Aaron, were each driving trucks, while claimants, Lewis, Britton and Mosley were relief drivers riding in the trucks.

The convoy departed on July 22, 1954 from Camp Ripley, Minnesota for its home station in Chicago, Illinois. On July 23rd, after spending the night at Camp McCoy, Wisconsin, the convoy proceeded toward Chicago on U. S. Route No. 12. At a point approximately seven miles south of Baraboo, Wisconsin, in dark rainy weather, and on a blacktop highway, the convoy, after negotiating a long incline and a curve at the crest, started downhill. A civilian automobile, passing the convoy on the left, suddenly cut into one of the intervals between the vehicles directly in front of the deceased, Lester Aaron, who immediately applied his brakes. His truck slid out of control, turned over, and resulted in injuries

from which he died. Claimants, Willie Britton, Jr., and Burton Mosley were riding in the truck driven by Lester Aaron, and were also injured when the vehicle overturned.

Claimant, Willie Walker, was driving a truck following that driven by Aaron. Upon arriving at the crest of the hill he saw the overturned truck in front of him, and applied his brakes, which caused the truck to overturn, and resulted in injuries to him and to' claimant, Leon Dunham, who was riding in the truck.

Claimant, Leon Brown, was the driver of a third truck. Upon arriving at the crest of the hill, he applied his brakes upon seeing the other trucks overturned, which caused his truck to slide off the road, and come to rest on its side, and resulted in injuries to his person.

Claimant, Freddie Lewis, a relief driver in still another truck, which was being driven by Private First Class Luckie A. Wright, was injured when that truck likewise slid off the road, and turned over on its right side, when its driver attempted to come to a stop upon arriving at the scene of the accident.

All of the men involved in the accident were found to be in the line of duty, and were injured or killed while performing their duties as enlisted men in pursuance of orders from their Commander-in-Chief. The occurrence was not a result of wilful neglect or misconduct on the part of claimants. There is no dispute on this point, and admittedly they come within the provisions of the above statute.

In considering the amount of financial help and assistance each claimant is entitled to under the statute, we must consider each separately, and attempt to adjust the same as the merits of each demand.

With respect to claimant, Master Sergeant Leon Dunham, the evidence established that he was 25 years of age, married, and the father of two children. He was employed by the Ford Motor Company, Aircraft Engine Division, as a jet engine mechanic at $2.19 per hour. He was hospitalized from July 23, 1954 through December, 1954, and the injuries he sustained consisted of total blindness of the left eye, and a 10% loss of hearing of the left ear. He also sustained a basalor skull fracture. He appeared before the Physical Evaluation Board at the Walter Reed Army Hospital on November 23, 1954, and his injuries were found to be permanent. After being released from the hospital, he returned to work at the Ford Aircraft Engine Division as a janitor at $1.74 per hour. On the date of the hearing he was employed at Hallicrafter Radio Engineering at $2.00 per hour, and worked forty hours per week. Claimant testified that he was found by the Evaluation Board to have a 40% disability, and receives $263.00 per month on a 60% disability rating from the Veterans Administration, which he chose rather than retirement benefits from the Army, due to the higher evaluation.

Claimant stated that he lost a total sum of $5,748.00 in wages due to the injuries, but drew $3,400.00 in military pay during that time. He also stated that he received $1,140.00 as a dependence allowance for his wife and children during that period. This claimant also received $41.00 per week for twenty-six weeks, totaling $1,066.00, as well as the sum of $1,000.00 for the loss of the sight of one eye from the John Hancock Insurance Company, which was a group policy, the benefits of which he was entitled to because of his employment with the Ford Motor Company.

In determining the amount claimant is entitled to under the Military and Naval Code of the State of Illinois, it has been the policy of this Court to take into consideration the amount received from the Federal Government as compensation for the same injuries, although such payments under the federal laws pertaining to members of the Armed Forces, including national guardsmen, do not bar a recovery under the Military and Naval Code. *Dudley, Et Al,* Claimants vs. *State of Illinois,* Respondent, 21 C.C.R. 255; *Roberts,* Claimant vs. *State of Illinois,* Respondent, 21 C.C.R. 406; *Sypniewski,* Claimant vs. *State of Illinois,* Respondent, 21 C.C.R. 586.

The test to be applied in these cases is not that of finding damages for like injuries in common law actions. The awards are rather to be made for financial help and assistance as the merits of each case may demand. Oftentimes this Court has used the Workmen's Compensation Act as a guide in arriving at an award in cases of this type. In doing so, however, the Court has not considered the Compensation Act to be either a ceiling over or a floor under the awards.

Here the claimant's earning capacity has unquestionably been affected. Although he is presently earning only nineteen cents less per hour than he earned before the injury, it is common knowledge that the wages of a jet engine mechanic have increased between 1954 and September, 1957, the date of the hearing. Considering the payments received in the hospital and from the group policy, the loss of his wages during his hospitalization has been off-set, and the 60% disability award, which he is receiving from the United States Government, is a substantial one in the amount of $263.00 a month. Tak-

ing everything into consideration, we feel that an award of $3,500.00 would be proper.

Claimant, Staff Sergeant Leon Brown, was 25 years of age, single, and employed as a dining servicer at $1.17 per hour prior to the accident. He received a skull fracture, which resulted in diplopia of the right eye, and cuts to his face, which caused scars, and necessitated surgical repair of the right lower eyelid. He was hospitalized from July 23, 1954 to March 15, 1956. Claimant testified that he sustained a loss of wages during this time in the amount of $4,256.00, and received Army pay in the amount of $1,120.00 during that period, or a net loss of $3,136.00. He also testified that he is receiving benefits under Public Law 108 in the amount of $93.60 per month on a 50% disability rating. He stated that he has difficulty reading. He is now employed as a dining service helper by the United Airlines at the rate of $1.48 an hour.

This injury is difficult to evaluate because of the meager medical information available. It does not even appear from claimant's testimony that he still has double vision. His testimony regarding his present condition is limited to the statement that he has difficulty reading. It is noted that he is making more at the present time than he was prior to the accident, and is engaged in the same type of work. None of the medical reports in the record are of recent date.

He appeared before the Physical Evaluation Board at the Walter Reed Hospital on December 16, 1954. There was no finding of permanency, but the designation on the Medical Board proceedings, petitioners' exhibit No. 5e, states ''may be permanent''. This was the last

report. No medical testimony was presented other than the reports.

In view of this state of the record, we believe that the amount of $3,136.00, which is the loss of wages, is a proper award on this claim.

With respect to the claim of Sergeant Freddie Lewis, the evidence establishes that he was 25 years of age, married, and had no children. He was employed as a heat chaser by the United States Steel Company at $1.73 per hour. He was hospitalized from July 23, 1954 to February 28, 1955. During this time he lost $2,176.00 in pay, and received Army pay of $1,200.00. He also received $676.00 in accident and sick benefits during this period, being 26 weeks at $26.00 a week, from the United States Steel Corporation. His injuries consisted of a fracture of the right acetabulum; dislocation of right hip; neuropathy, right sciatic nerve due to trauma; and, loss of rotation of the thigh. At the time of the hearing he was receiving $109.00 per month from the Veterans Administration and the United States Army. He was then asked what percentage of disability he received, and his answer was "30% from one, and 30% from the other". Apparently this represents a disability award paid by the Federal Government.

The record is in such a condition that it is difficult to determine the extent and permanency of claimant's physical injuries. This claimant offered as exhibit No. 9b a Rating Sheet from the Veterans Administration Hospital, which is also a medical report. For want of more specific information concerning his condition we set it forth as follows:

"RATING SHEET

| Name | C-No. | Date of Rating |
|------|-------|----------------|
| Lewis, Freddie E. | 19 035 002 | 5-18-56 |

*Address*        *Service Serial No.*        *Date of Last Examination*
                                              4-9-56

*City*    *State*    *Date of Claim*    *Type*    *War*    *Occupational Determination*

| Type Disch. | Br. Service | Active Duty Date | Date R.A.D. |
|-------------|-------------|------------------|-------------|
| Hon. | Br. | 7-10-54 | 2-28-55 |

*Date of Birth*        *Place of Birth*        *Rank*    *Race Sex*

Ratings

Classification of Rating:—Initial—Confirmed—Increase X Decrease

VAR. 1009(E)—As Amended

Jurisdiction: Scheduled examination.

Issue: Evaluation of service connection paralysis, sciatic nerve, right, residuals, dislocation, right hip.

Facts: The cited neurological examination reveals the veteran entered into the examining room with a short leg brace. The right lower extremity reveals a moderate atrophy of the quadriceps muscle and also of the gastrocenemius muscle, which is caused by disuse. The veteran is able to dorsiflex his right foot to the neutral point, meaning to the neutral position; and he can also evert and invert the right ankle. There seems to be no restriction of the ankle shown upon passive motion. The veteran does not walk with a typical steppage gait, and he has no complete foot drop. There is only a partial foot drop. Objective sensory testing reveals a hyperestetic zone over the dorsal aspect of the right foot. The distribution of the superficial perineal nerve. The veteran is able to walk on his toes, and is able to lift his toes up to a certain degree while standing on his heels.

The orthopedic examination reveals there is noticeable atrophy of the right extremity when compared to the left. On pressure over the midline posterior aspect right thigh the veteran complains of a peculiar sensation like an electrical impulse. Hyper-extension of the right thigh at the hip is completely restricted. There is a slight restriction of both flexion of the right thigh at the hip actively and passively.

There is also some restriction, possibly 33% of full abduction and adduction, of the right thigh at the hip, and considerable restriction of internal rotation of the right thigh at the hip. In the right lower extremity is flexed at the hip, and knee dorsification can be performed to at least 33% of the normal range is accomplished both actively and passively, indicating that there is no foot drop of the right lower extremity at this time. There

is a minimal restriction of motion of the toes of the right foot, fibrous from immobilization.

The x-ray examination of the pelvis, including both hip joints, reveal there is evidence of a rather marked degree of deformity noted involving the right acetabulum, as well as the head of the right femur and the right femoral neck. The region of the right acetabulum appears to be displaced centrally as compared with the left. A few small irregular areas of bony density are noted within the soft tissues adjacent to the right femoral neck and greater trochanter.

Discussion: In view of the evidence, a decrease in evaluation is warranted. Var. 1009 (E)—as amended.

1 Incurred Pl 28/82nd C VR 1(a) Part I, Par. 1(a)
60% from 3-1-55 to 7-17-56
20% from 7-18-56
8520-955 Paralysis, sciatic nerve, right, incomplete, moderate

10% from 3-1-55
5253 Residual, dislocation, right hip

60% from 3-1-55 to 7-17-56
COMB: 30% from 7-18-56
32 No combat
8-2507—4-9-58

| Medical Rating Specialist | Claims Rating Specialist | Occupational Rating Specialist |
|---|---|---|
| /s/ B. A. Salzberg | /s/ J. E. Rymsza | /s/ John R. O'Connor |
| B. A. Salzberg, M.D. | J. E. Rymsza, Chrm. | John R. O'Connor |

| Rating Board No. | Name of VA Station |
|---|---|
| 1 | 3028-Chicago |

VA Form
July, 1954

Existing Stocks of VA Form VA DC 189462
VB 8-564a 564a Sept., 1939 Will Be Used

Petitioners' exhibit No. 9C"

Claimant testified that he has not worked since the date of the accident, and that he feels unable to do any work. He stated that he was still under the treatment of a doctor at the Veteran's Hospital once every two months, and that he was taking a course of instruction under the Veterans Administration rehabilitation program. He applied for work at U. S. Steel on March 7, 1955, again in May of 1955, and on two other occasions,

the dates of which were not stated in the record. On each of these occasions his application was turned down because of his physical condition.

It is difficult to evaluate this claim, since there is no direct testimony regarding permanency or of the extent of disability other than the record quoted above. In this report it is apparent that he is improving to some extent.

Claimant's own testimony leaves much to be desired with reference to his present condition, i.e., what he can or cannot do. We believe, however, that the record justifies an award in the amount of $5,500.00.

Claimant, Sergeant Willie Britton, Jr., age 26, was employed by Western Electric at the rate of $1.51 per hour. He was hospitalized from July 23, 1954 to November, 1954 for a dislocated shoulder. He sustained loss of wages in the amount of $1,885.00 during this hospitalization period, and received Army pay of $985.00, representing a total net loss of pay in the amount of $900.00. After his hospital release he reported back for general military duty. He later returned to his employment with Western Electric on February 2, 1955. There was no testimony offered with respect to his present condition, and, consequently, we must presume that the injury healed correctly. We, therefore, recommend an award in the amount of $900.00.

Claimant, Staff Sergeant Burton Mosley, age 25 years, married, and the father of one child was employed by the City of Chicago Police Department at a salary of $325.00 per month. He received multiple abrasions to the arm, head, back and face, resulting in permanent scars. He testified that he was hospitalized for five or six weeks. He suffered no loss of wages, inasmuch as he

received his regular salary during that time. He stated that he returned to work three days after he left the hospital. He complains of headaches and pain in the shoulder. From the record it appears that he lost no wages, was not permanently injured, nor has his earning capacity been affected. We believe that upon this record no award can be made.

Claimant, Private Willie Walker, age 34, married, and father of five children, was employed by the United Steel Company at the rate of $1.57 per hour. He was hospitalized from July 23, 1954 to September 9, 1954. His injury was a fracture of the left third metacarpal. He testified that he sustained a loss of wages in the amount of $390.00 during his hospitalization. He received Army pay in the amount of $97.00, making a net loss in the amount of $293.00. After his discharge, he returned to work for the United States Steel Company. He testified that thereafter his hand gave him no further trouble. We feel that an award of $293.00 would be a proper award to make on this claim.

Claimant, Katie Aaron, widow of the deceased, Sergeant First Class Lester Aaron, for herself and the minor children of Lester Aaron, deceased, testified that she is the widow of Lester Aaron, and that the following named children had been born to the marriage: Linel Aaron, age 9, Lester Aaron, Jr., age 5, Loretta Aaron, age 3, and Larry Aaron, age 2, all of whom survived their father, Lester Aaron. She stated that his annual earnings were $3,400.00, and that he was employed at the United States Post Office in Chicago. Lester Aaron was 32 years of age at the time of his death. She further testified that she receives $208.00 per month from the Veterans Administration as benefits resulting from the

death of her husband. There was no testimony regarding her earnings, if any. We feel that the following awards should be made with respect to this claim: Katie Aaron, $3,500.00; Katie Aaron, Guardian of Linel Aaron, A Minor, $2,500.00; Katie Aaron, Guardian of Lester Aaron, Jr., A Minor, $2,500.00; Katie Aaron, Guardian of Loretta Aaron, A Minor, $2,500.00; and, Katie Aaron, Guardian of Larry Aaron, A Minor, $2,500.00. The awards to Katie Aaron, as Guardian of the estates of the respective children, are made with the understanding that she will be appointed Guardian by the Probate Court of Cook County, Illinois.

The claim of Leon Dunham is hereby allowed in the amount of $3,500.00.

The claim of Leon Brown is hereby allowed in the amount of $3,136.00.

The claim of Freddie Lewis is hereby allowed in the amount of $5,500.00.

The claim of Willie Britton, Jr., is hereby allowed in the amount of $900.00.

The claim of Burton Mosley is hereby denied.

The claim of Willie Walker is hereby allowed in the amount of $293.00.

The claim of Katie Aaron is hereby allowed in the amount of $3,500.00.

The claim of Linel Aaron is hereby allowed in the amount of $2,500.00.

The claim of Lester Aaron, Jr., is hereby allowed in the amount of $2,500.00.

The claim of Loretta Aaron is hereby allowed in the amount of $2,500.00.

The claim of Larry Aaron is hereby allowed in the amount of $2,500.00.